In the Matter of Sheridan S. JONES.

No. CIV.A. 02–8313.
Bankruptcy No. 01–10733.

United States District Court,
E.D. Pennsylvania.

Aug. 5, 2003.

Christine Shubert, Tabernacle, NJ, pro se.

David A. Scholl, Newtown Square, PA, for Plaintiff/Appellant.

Paul R. Beckert, Jr., Langhorne, PA, for Defendant.

## *MEMORANDUM*

DuBOIS, District Judge.

Presently before the Court is an appeal of Bankruptcy Judge Kevin J. Carey's Order of September 27, 2002 that a mortgage held by The Money Store, Inc. ("The Money Store") against the home of Sheridan S. Jones ("Debtor"), located at 1013 Elsinor Place, Chester, Pennsylvania (the "Property"), cannot be avoided in bankruptcy. Debtor and Christine Shubert (the "Trustee") seek to avoid the mortgage under the "strong arm" powers of the Trustee as provided in 11 U.S.C. § 544 on the grounds that: a) a notary was not physically present at the time Debtor signed the mortgage; and b) even if a notary was present, a Philadelphia County notary cannot acknowledge a mortgage for property located in Delaware County.

For the following reasons, the Court concludes that there exists no basis to avoid the mortgage. Accordingly, the Court will affirm the bankruptcy court's decision.

## I. FACTUAL BACKGROUND

In August 1995, as a result of a door-to-door solicitation by representatives of P. Angelo & Sons (the "Contractor"), Debtor entered into a home improvement installment contract for certain repairs[1] to the Property. Included in that contract were documents entitled "Collateral Mortgage", "Settlement Statement", and "Credit Application for Property Improvement Loan." Debtor admits signing each of those documents, all of which are dated August 4, 1995.

---

1. Those repairs included capping seven windows and certain repairs to Debtor's porch.

On August 4, 1995, Debtor, his wife, and the Contractor met in Debtor's home. At that time the parties agreed to the scope of home improvements, the price for the improvements, and the financing terms. Debtor recalls that this meeting lasted only forty-five (45) minutes and was the only meeting he had with the Contractor. Although acknowledging that he signed documents at that meeting, including a document entitled "Collateral Mortgage", Debtor testified he was unaware that he signed a mortgage on his home. He also testified that no documents were notarized at the meeting. The Collateral Mortgage, however, facially shows it was witnessed by Martin Blue and notarized by Richard M. Hoffman, a Philadelphia County notary (the "Notary"). That mortgage was accepted for filing and recorded in Delaware County, Pennsylvania.

On September 11, 1995, Debtor signed a Certificate of Completion, acknowledging that the repairs to his Property were completed by the Contractor.[2] The mortgage was then assigned by the Contractor to The Money Store; that assignment was recorded in Delaware County, Pennsylvania.

## II. PROCEDURAL HISTORY

Debtor made payments on the home improvement installment contract until October 27, 1997. Thereafter, on August 14, 2000, The Money Store commenced a mortgage foreclosure proceeding against Debtor in the Court of Common Pleas, Delaware County, Pennsylvania. That foreclosure proceeding was automatically stayed by the filing by Debtor of a Petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania on January 17, 2001. On February 7, 2001, the Debtor and Trustee initiated an adver-

sary proceeding in that court by complaint against The Money Store seeking to avoid the mortgage. In the complaint, they alleged that the mortgage was avoidable under 11 U.S.C. § 544 in that the acknowledgment was defective because no notary was present at the time the mortgage was signed by Debtor.

On March 13, 2001, The Money Store filed an objection to the § 544 exemption claimed by Debtor (the "Exemption Objection"), and a motion for relief from the automatic stay to continue its attempts to enforce the mortgage in the Delaware County Court of Common Pleas (the "Stay Motion"). The bankruptcy court, by Order dated April 30, 2001, placed the adversary proceeding, the Exemption Objection, and the Stay Motion on a parallel track so that the related matters could be considered together. A trial was held on January 4, 2002; decision was reserved. Debtor was discharged from Chapter 7 bankruptcy on June 3, 2002.

On September 27, 2002, the bankruptcy court ruled that there was no basis to avoid the mortgage pursuant to the Trustee's "strong arm" powers under 11 U.S.C. § 544(a). Finding Debtor's "muddled" recollection of the events surrounding the execution of the documents, including who was present at the time of the execution, "incomplete and faulty," the bankruptcy court concluded that Debtor did not present sufficient evidence "to meet his burden of proving that a notary was not present at the time the documents were signed" and denied his request to avoid the mortgage. *Jones v. The Money Store, Inc. (In re Jones)*, 284 B.R. 92, 98 (Bankr.E.D.Pa. 2002).

That bankruptcy court also held that even if Debtor proved that the acknowledgment was somehow defective (which he

---

**2.** Debtor later testified that one of his windows was never capped.

did not), "[a]bsent an allegation of fraud or forgery, a recorded acknowledgment that is complete and proper on its face is prima facie evidence of the due execution of the mortgage." *Id.* at 95 (citing *Schwab v. Home Loan & Investment Bank, FSB (In re Messinger)*, 281 B.R. 568, 574 (Bankr. M.D.Pa.2002)). Because Debtor did not prove (or even allege) any fraud in connection with the execution of the documents, the bankruptcy court ruled in the alternative that the mortgage could not be unavoided in bankruptcy. The bankruptcy court then granted The Money Store relief from the automatic stay to enforce the mortgage in state court. *See id.* at 98. Debtor and Trustee appealed the bankruptcy court's decision to this Court on November 4, 2002.

## III. DISCUSSION

Debtor claims that the uncontradicted testimony of Debtor and his wife that there was no notary present at the time the mortgage was signed is sufficient evidence that the mortgage was not properly acknowledged and thus, "adjudged [to be] fraudulent and void against any subsequent purchaser," 21 PA. CONS. STAT. ANN. § 444, thereby, avoidable in bankruptcy. In the alternative, Debtor argues that because a Philadelphia County notary acknowledged a mortgage for property located in Delaware County, the mortgage is defectively acknowledged and therefore "fraudulent and void against any subsequent purchaser." *Id.*

Debtor also contends that the bankruptcy court erred in ruling that fraud or forgery must be alleged and proved in order for an acknowledged and recorded mortgage, regular and proper on its face, to be avoided under the trustee's "strong arm" powers. It is Debtor's position that the bankruptcy court's reliance on *Messinger* in reaching that decision was mis-

placed and that the court should have followed *Phelan v. Fleet Consumer Discount Co. (In re Rice)*, 133 B.R. 722 (Bankr. E.D.Pa.1991), which held that a defective acknowledgment of a mortgage—proven by the absence of a notary at the time the mortgage was signed by the mortgagor—is sufficient to avoid the mortgage.

The Money Store, on the other hand, asserts that the bankruptcy court correctly determined that the Debtor failed to provide sufficient evidence that a notary was not present at the time he signed the mortgage. In addition, it contends that acknowledgments within Pennsylvania may be made before any notary regardless of the county in which the notary resides. The Money Store also argues that the court was correct in relying on *Messinger* in concluding in the alternative that even if Debtor had proved that he did not sign the mortgage before a notary, he must allege and prove fraud or forgery in order for the facially acknowledged and recorded mortgage to be avoided in bankruptcy.

■ For purposes of this appeal, the Court reviews the bankruptcy court's legal conclusions *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof. *See In re Engel*, 124 F.3d 567, 571 (3d Cir.1997).

### A. Trustee's Avoidance Powers Under 11 U.S.C. § 544(a)

■ "The Bankruptcy Code permits a debtor to stand in the shoes of a trustee and claim certain protections that trustees are typically empowered to assert." *McLean v. City of Philadelphia, Water Revenue Bureau*, 891 F.2d 474, 476 (3d Cir. 1989) (citing 11 U.S.C. § 522(h)). "Among these protections is a trustee's power to avoid any liens that, according to state law, have not been properly perfected by the time a debtor has commenced the bankruptcy proceeding." *Id.* That avoidance

power is created in § 544(a) of the Bankruptcy Code, the "strong arm" clause, which provides, in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—...

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). In other words, § 544(a)(3) confers upon the trustee (and, through § 522(h), a debtor) the rights of a hypothetical bona fide purchaser when, as in this case, real property is at issue. *See In re Bridge,* 18 F.3d 195, 199 (3d Cir. 1994). Thus, the Bankruptcy Code permits a trustee and a debtor—standing in the shoes of a trustee—to avoid an obligation on real property if it can be shown that the obligation would not have bound a bona fide purchaser at the time the debtor commenced his bankruptcy action. *McLean,* 891 F.2d at 476.

## B. Acknowledgments and Avoidance Under Pennsylvania Law

■ The property rights of a mortgagor and mortgagee are "created and defined by state law" and must be reviewed under state law. *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 36 (3d Cir.1993) (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)); *see also In re Bridge,* 18 F.3d at 200 ("[A]lthough the trustee's strong arm powers arise under federal law, the scope of these avoidance

powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing."). Accordingly, because the Property is located in Pennsylvania, the Court will apply Pennsylvania law to determine whether Debtor can avoid the mortgage held by The Money Store.

■ To perfect a security interest under Pennsylvania law, the mortgagee must record the mortgage with the Recorder of Deeds in the county in which the real property is located. 21 Pa. Cons. Stat. Ann. § 621. The purpose of recording the mortgage is to "provide notice to the whole world of the person or entity who encumbers the title." *Messinger,* 281 B.R. at 572 (citations omitted). An acknowledgment is an essential prerequisite for recording a mortgage. *See Abraham v. Mihalich,* 330 Pa.Super. 378, 479 A.2d 601, 603 (1984); 21 Pa. Cons. Stat. Ann. § 42. "An acknowledgment is a formal declaration or admission before an authorized public officer, by a person who has executed an instrument, that such instrument is his or her act and deed." *Messinger,* 281 B.R. at 573 (citing *Abraham,* 479 A.2d at 603). An acknowledgment also includes a "certificate" of acknowledgment signed by the acknowledging officer. 21 Pa. Cons. Stat. Ann. § 291.8. "With the acknowledgment, the mortgage is eligible to be recorded ... without further proof of execution." *In re Reimiller,* 281 B.R. 561, 566 (Bankr. M.D.Pa.2002) (citing *Munsey Trust Co. v. Alexander, Inc.,* 42 F.2d 604, 605 (D.C.Cir. 1930)), *aff'd,* 333 F.3d 135 (3d Cir.2003).

■ In Pennsylvania, acknowledgment of any instrument may be made before a notary public. *See* 21 Pa. Cons. Stat. Ann. § 291.2. In this capacity, a notary certifies that the executing party whose signature appears on the mortgage is actually the

person who signed that document and "that the individual to be bound has verified the document to be [his] intentional voluntary act or deed." *Messinger*, 281 B.R. at 574 (citing *Abraham*, 479 A.2d at 603). With limited exceptions [3], not present in this case, for a proper acknowledgment and certificate of acknowledgment, the parties must be physically present before a notary—a notary is not authorized to certify an acknowledgment *in absentia*. See *id.*

### 1. *The Bankruptcy Court's Findings of Fact*

The bankruptcy court's findings of fact, whether based on oral or documentary evidence, may not be set aside unless those findings are clearly erroneous and "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." FED. R. BANKR. P. 8013; *see also In re Trans World Airlines*, 322 F.3d 283, 287 (3d Cir.2003). "The bankruptcy court's findings of fact must stand unless 'the court is left with the definite and firm conviction that a mistake has been committed.'" *Ruxton v. City of Philadelphia*, 246 B.R. 508, 511 (E.D.Pa. 2000) (quoting *Brager v. Blum*, 49 B.R. 626, 629 (E.D.Pa.1985)); *see also Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (stating same).

■ Debtor bears the burden of proving the invalidity of the mortgage held by The Money Store. *See Berry v. Dial Consumer Discount Co (In re Berry)*, 11 B.R. 886, 891 (Bankr.W.D.Pa.1981); *Simon v. First Union Mortgage Corp. (In re Burnham)*, 231 B.R. 270, 272 (Bankr.N.D.Ohio 1999). On its face, the mortgage contains the indicia of validity. Debtor has acknowl-

edged that he executed the document entitled "Collateral Mortgage." That document clearly states—in significantly large, bold lettering—that it is a mortgage on the Property. The parties have also stipulated that the mortgage was duly filed with the Recorder of Deeds Office in Delaware County, Pennsylvania, and that the acknowledgment is complete and proper on its face.

Notwithstanding those indicia of validity, Debtor claims that no notary was present at the time he executed the mortgage. Because personal appearance of the parties is required for proper acknowledgment under Pennsylvania law, Debtor argues that the mortgage was not properly recorded, and it may therefore be avoided in bankruptcy.

■ The bankruptcy court found that Debtor did not meet his burden of proving the mortgage's invalidity. Specifically, the bankruptcy court found that the only evidence offered by Debtor—his testimony and that of his wife—was insufficient to meet his burden of proving that a notary was not present at the time the documents were signed. The bankruptcy court did not find such testimony at all credible, concluding that their recollection of the events surrounding the execution of the documents "muddled", "faulty", and "unreliable." *In re Jones*, 284 B.R. at 97.

This Court concludes that the bankruptcy court did not commit clear error in finding that Debtor failed to meet his burden of proving the invalidity of the mortgage. After reviewing the testimonial evidence, and considering the documentary evidence, notably, the regularly executed, facially notarized, and duly recorded mortgage, the Court concludes that it was not

---

**3.** 21 PA. CONS. STAT. ANN. § 291.7 permits acknowledgment by an "attorney in fact"—on behalf of the principal—and an "attorney at law," both of which are outside the presence of the parties whose signatures are being acknowledged.

clearly erroneous for the bankruptcy court to find Debtor's testimonial evidence unreliable and thus insufficient to prove that no notary was present at the time the mortgage was executed. As such, because this Court finds no clear error in the bankruptcy court's determination that Debtor failed to prove the mortgage was signed in the absence of a notary, there is no basis for avoiding the mortgage on that ground.

### 2. Debtor's Arguments as to 21 Pa. Cons. Stat. Ann. § 444

Debtor also argues that because a Philadelphia County notary acknowledged a mortgage for property located in Delaware County, that mortgage is defectively acknowledged under 21 Pa. Cons. Stat. Ann. § 444 and thus avoidable. At the outset, the Court notes that the bankruptcy court did not address that issue.

Section 444, which covers the recording of deeds and conveyances in Pennsylvania, states, in pertinent part:

All deeds and conveyances ... concerning any lands ... in this commonwealth, or whereby the title to the same may be in any way affected in law or equity, shall be acknowledged by the grantor, or grantors, bargainor or bargainors, or proved by one or more of the subscribing witnesses thereto, before one of the judges of the supreme court, or before one of the judges of the court of common pleas, or recorder of deeds, prothonotary, or clerk of any court of record, justice of the peace, or *notary public of the county wherein said conveyed lands lie*, and shall be recorded in the office for the recording of deeds where such lands ... are lying and being, within ninety days after the execution of such deeds or conveyance, and every such deed and conveyance that shall at any time after the passage of this act be made and executed in this common-

wealth, and *which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration ...*

21 Pa. Cons. Stat. Ann. § 444 (West 2001) (emphasis added). Debtor argues that because the notary who acknowledged the mortgage was not "of the county wherein said conveyed lands lie"—Delaware County—it is "adjudged fraudulent and void" against a bona fide purchaser for value and thus avoidable in bankruptcy. *Id.* The Court disagrees with that argument.

The Commonwealth, by Act of August 10, 1864, P.L. 962, § 2, authorized notaries to acknowledge deeds and conveyances for land in any part of the state. Section 444, with its more restrictive language, was amended by Act of May 19, 1893, P.L. 108, No. 61, § 1. A question concerning the effect of § 444, as amended in 1893, on the Act of August 10, 1864, was addressed in *Davey v. Ruffell*, 3 Pa. D. 75 (1893). The land conveyed in that case was located in the City of Philadelphia and the deed was acknowledged before a notary public residing in Delaware County. Objection was made to the conveyance pursuant to § 444 on the ground that the notary did not reside in the county where the land was located. That objection was rejected by the court in *Davey*.

After reviewing the language of § 444 and its primary purpose "of changing the time allowed for recording a deed" from 180 days to ninety days after a deed's execution, the court in *Davey* concluded that the phrase "shall not be proved and recorded as aforesaid" in § 444 did not relate to the officers—including notaries—named who are authorized to take acknowledgments and proofs of deeds, "but to persons who are to make the acknowledgment or give the proof, that is, the grantor or grantors, bargainor or bargai-

nors, or the subscribing witnesses to the deed." *Id.* Accordingly, the court held that § 444, as amended in 1893, "in no manner repeals [the Act of 1864] or any other of the Acts appointing officers to take acknowledgments. Nor is it inconsistent with or repugnant to them, nor exclusive of them, by any language contained in it." [4] *Id.* Continuing, the *Davey* court stated that § 444 and the Act of 1864 "are to be taken together as interpreting and enforcing each other," and concluded "that the acknowledgment of the deed [at issue]... was taken by a properly authorized officer, that is, by a notary public of this commonwealth, and that it is not necessary that he should have been a resident of the county in which the conveyed lands lie." *Id.*

The Act of 1864 was repealed by the Notary Public Law of 1949, Act of May 18, 1949, P.L. 1440, which was, in turn, repealed by the Act of August 21, 1953, P.L. 1323, § 18, which provides:

> Notaries shall have the power to take depositions and affidavits, to take and receive the acknowledgment or proof of all deeds, conveyances, mortgages, or other instruments or writing touching or concerning any lands, tenements or hereditaments, situate, *lying and being in any part of this State.*

57 Pa. Cons. Stat. Ann. § 164 (West 2001) (emphasis added) [5]. In *Engstrom v. Siegel,* 36 Pa. D. & C.2d 184 (1965), plaintiffs signed an oil and gas lease on land located in Warren County. That lease was acknowledged by a subscribing witness before a notary from Erie County. Plaintiffs argued that the "lease is not a recordable instrument and should be expunged from" the Warren County record because, *inter alia,* "proof of the subscribing witness as to the execution of said Lease was not made before an officer qualified to receive such proof" in that the notary did not reside in Warren County. *Id.* at 186–87. Plaintiffs relied on the language in § 444 in arguing that a subscribing witness cannot acknowledge a lease before a notary who does not reside in the same county "wherein said conveyed lands lie." 21 Pa. Cons. Stat. Ann. § 444. The court in *Engstrom* rejected that argument. After highlighting that the Act of August 21, 1953 explicitly authorizes notaries to acknowledge leases concerning lands lying in any part of the state and, based upon *Davey,* holding that the Act of 1953 was not inconsistent with § 444, the court concluded that the oil and gas lease was properly acknowledged before a notary "qualified" to take such an acknowledgment, not withstanding the fact that the notary did not reside in Warren County. *Engstrom,* 36 Pa. D. & C.2d at 187.

In the instant matter, the Court finds *Davey* and *Engstrom* instructive and sees no reason to depart from the holdings in those cases. The Act of August 21, 1953 explicitly gives notaries the "power ... to take and receive the acknowledgment ... of all ... mortgages ... touching or concerning any lands ... being in any part of this State." 57 Pa. Cons. Stat. Ann. § 164. Following *Davey* and *Engstrom,* the Court concludes that, pursuant to the Act of 1953, at the time Debtor executed the mortgage a notary from Philadelphia

---

**4.** The court also noted state legislation which had "extended [the] power" of justices of the peace, common pleas judges, and recorder of deeds to take acknowledgments of deeds for land lying in any part of the state, and the "confusion" caused by § 444 which "seeming[ly][ ] treat[s]" notaries as "county officers,

when they are in fact and in law state officers ... [similar to] judges of the supreme court and common pleas." *Id.*

**5.** This Act was repealed by Act of December 9, 2002, P.L. 1269, No. 151, § 9 (effective July 1, 2003).

County was authorized to acknowledge that mortgage notwithstanding the fact that it concerned property located in Delaware County. Thus, the acknowledgment of the Delaware County mortgage by a notary public from Philadelphia County was in compliance with Pennsylvania law and there is no basis to avoid the mortgage on that ground.

In light of that determination, the Court need not reach the bankruptcy court's alternative ruling that the Debtor, in order to avoid a facially acknowledged and recorded mortgage on the ground that it was defectively acknowledged, must allege and prove fraud or forgery in connection with that acknowledgment (which the bankruptcy court found the Debtor failed to do).

## IV. CONCLUSION

For the foregoing reasons, this Court affirms the order of the bankruptcy court of September 27, 2002 in which that court ruled Debtor's mortgage was not avoidable and sustained The Money Store's Exemption Objection. That part of the order granting Debtor's Stay Motion is mooted by the termination of the bankruptcy proceedings.

An appropriate Order is attached.

### ORDER

**AND NOW,** this 5th day of August, 2003, upon consideration of Sheridan S. Jones and Christine Shubert's Appeal from the Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania, Honorable Kevin J. Carey, September 27, 2002 (Document No. 1, filed November 4, 2002), Sheridan S. Jones and Christine Shubert's Brief (Document No. 3, filed November 12, 2002), The Money Store, Inc.'s Brief (Document No. 4, filed November 25, 2002), and Sheridan S. Jones and Christine Shubert's Reply Brief (Document No. 5, filed December 5, 2002),

**IT IS ORDERED** that the September 27, 2002 decision of the Bankruptcy Court is **AFFIRMED,** and judgment is **ENTERED in FAVOR** of The Money Store, Inc. and **AGAINST** Sheridan S. Jones and Christine Shubert.